## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**NYCOLE FARAH,**

> **Plaintiff,**

 **v.**                                **CASE NO:**

**SOLERA HOLDINGS, INC.,**

> **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NYCOLE FARAH, (hereinafter "Plaintiff" or "Ms. Farah"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, SOLERA HOLDINGS, INC. (hereinafter "Defendant" or "Solera Holdings") and alleges:

## INTRODUCTION

1.      Plaintiff, Nycole Farah, brings this action against Defendant, Solera Holdings, Inc., her former employer, seeking to recover damages for unlawful discrimination based on sex, gender, and pregnancy, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; the Pregnancy Discrimination Act of 1978, as amended, 42

U.S.C. § 2000e(k) ("PDA"); and the Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg to 2000gg-6 ("PWFA").

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her sex, gender, and pregnancy status, failed to provide reasonable accommodations for her known limitations related to pregnancy, failed to engage in the interactive process to determine appropriate accommodations, and retaliated against her for disclosing her pregnancy and inquiring about maternity leave and short-term disability benefits, all in violation of her rights under Title VII, the PDA, and the PWFA, culminating in her unlawful termination only eight days after the commencement of her employment.

3.     Defendant's discriminatory and retaliatory actions included, but were not limited to:

a.     Terminating Plaintiff's employment within days of her disclosure of her pregnancy and her inquiries regarding maternity leave and short-term disability benefits;

b.      Failing to provide reasonable accommodations for Plaintiff's known limitations related to her pregnancy, including time off for prenatal medical appointments;

c.      Failing to engage in any interactive process to determine appropriate pregnancy-related accommodations;

d.      Retaliating against Plaintiff for exercising her rights under the PWFA by requesting reasonable accommodations related to her pregnancy;

e.      Using a pretextual reason — a six-year-old misdemeanor charge with adjudication withheld, which was not even covered by the scope of Plaintiff's job application — to justify her termination while similarly situated employees with criminal histories were permitted to remain employed; and

f.      Terminating Plaintiff while she was visibly and approximately five months pregnant, causing significant financial hardship and emotional distress during a critical period of her pregnancy.

4.      As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including, but not limited to: loss of income, loss of opportunity for future income, loss of benefits, and loss of

future pay increases. In addition, she has suffered and continues to suffer emotional distress, mental anguish, fear, anxiety, stress, embarrassment, and humiliation, including significant concern for the health and well-being of her unborn child as a result of the stress caused by Defendant's unlawful conduct.

5. Plaintiff has incurred costs and attorney's fees in bringing this matter and seeks all available remedies under applicable law, including back pay, front pay, compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5.

7. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and

pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Duval County, Florida.

## PARTIES

9. Plaintiff, NYCOLE FARAH, is a twenty-seven-year-old female who, at all times material herein, was approximately five months pregnant and visibly pregnant during the entirety of her employment with Defendant.

10. Plaintiff is a member of a class protected against discrimination and retaliation based on her sex, gender, and pregnancy status under Title VII, the PDA, and the PWFA.

11. During the period from January 19, 2026, until January 27, 2026, Defendant employed Plaintiff as a Customer Service Representative 2 (CSR 2) at Defendant's facility located at 8900 Prominence Pkwy, Building 100, Suite 300, Jacksonville, Florida 32256.

12. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

13. At all times material herein, Plaintiff was an employee entitled

to protection as defined by Title VII, the PDA, and the PWFA.

14.     The Defendant, SOLERA HOLDINGS, INC., is a foreign corporation with a principal corporate address located at 1500 Solana Blvd, Suite 6300, Westlake, Texas 76262.

15.     At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Duval County, Florida, from its facility located at 8900 Prominence Pkwy, Building 100, Suite 300, Jacksonville, Florida 32256, where it employed Plaintiff.

16.     At all times material herein, Defendant employed fifteen (15) or more employees, thereby meeting, and continuing to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, Title VII, the PDA, and the PWFA.

17.     Accordingly, Defendant is liable under Title VII, the PDA, and the PWFA for the unlawful discrimination and retaliation to which it subjected Plaintiff as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

18.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

19.     On February 15, 2026, Plaintiff timely dual filed a Charge of

Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, discrimination based on sex, pregnancy, and retaliation (EEOC Charge No. 510-2026-04995).

20.    On February 26, 2026, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 510-2026-04995) against Defendant.

21.    This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

22.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23.    Plaintiff, Ms. Farah, is a 27-year-old female who was approximately five months pregnant when she sought more stable employment that would provide benefits for herself and her unborn child.

24.    Prior to applying with Defendant, Plaintiff had been employed at a bar but left that position specifically because of her pregnancy, seeking employment that would offer better working conditions, stability, and access to maternity benefits.

25.    In January 2026, Plaintiff applied for the position of Customer Service Representative 2 ("CSR 2") with Defendant Solera Holdings Inc. through the online job platform Indeed.

26.    Defendant hired Plaintiff on January 19, 2026, as a Customer Service Representative 2 at Defendant's location at 8900 Prominence Parkway, Building 100, Suite 300, Jacksonville, Florida 32256.

27.    In her position as CSR 2, Plaintiff's duties included making outbound calls to schedule appointments with dealerships.

28.    Plaintiff was qualified for the CSR 2 position and was able to perform the essential functions of the position, with or without reasonable accommodation.

29.    At the time Defendant hired Plaintiff on January 19, 2026, Plaintiff was approximately five months pregnant, but this fact was not disclosed during the hiring process or interview.

30.    During Plaintiff's first week of employment, specifically during the week of January 19 through January 27, 2026, Plaintiff disclosed her pregnancy to Defendant.

31.    Plaintiff made this disclosure because she needed time off to attend prenatal medical appointments with her healthcare providers.

32. Plaintiff was receiving prenatal care at St. Vincent's Family Center and had also required emergency room visits in connection with her pregnancy.

33. Plaintiff's pregnancy-related need to attend prenatal medical appointments constituted a known limitation related to pregnancy, childbirth, or related medical conditions.

34. Plaintiff communicated her known pregnancy-related limitation to Defendant when she disclosed her pregnancy and informed Defendant that she needed time off to attend prenatal medical appointments.

35. Plaintiff requested a reasonable accommodation consisting of brief, periodic time off to attend prenatal medical appointments, with the ability to return to work thereafter.

36. In addition to requesting time off for prenatal medical appointments, Plaintiff inquired about Defendant's maternity leave policies and short-term disability benefits during her first week of employment.

37. Plaintiff's requested accommodation was reasonable and would not have imposed an undue hardship on Defendant's business operations.

38. Defendant did not advise Plaintiff that her requested accommodation would create any hardship or operational difficulty.

39.   Defendant did not engage in any good-faith interactive process with Plaintiff regarding reasonable accommodations for her pregnancy-related needs.

40.   Defendant did not provide Plaintiff with any accommodation for her prenatal medical appointments or pregnancy-related limitations.

41.   On January 27, 2026, just eight days after being hired and immediately following her pregnancy disclosure and accommodation requests during her first week of employment, Plaintiff was terminated by Jarai Cain, her supervisor, in an in-person meeting.

42.   During the termination meeting, Ms. Cain stated that the reason for Plaintiff's termination was that a background check had allegedly revealed a misdemeanor petty theft charge from November 2019 in Duval County, Florida, for which adjudication was withheld.

43.   The timing of Plaintiff's discharge, occurring so soon after Plaintiff's pregnancy disclosure and immediately after her inquiries about pregnancy-related benefits and accommodations, is highly suspicious and indicative of pregnancy-based discrimination.

44.   Plaintiff worked her final day on January 28, 2026, and received her last compensation of $320.00 on January 30, 2026.

45. The stated reason for Plaintiff's termination is pretextual for several reasons that demonstrate the background-check rationale was merely a cover for discrimination based on Plaintiff's pregnancy and retaliation for requesting pregnancy-related accommodations.

46. First, the job application that Plaintiff completed only asked about felony convictions, not misdemeanors, so Plaintiff was not required to disclose the 2019 misdemeanor charge and did not misrepresent anything on her application.

47. Second, adjudication was withheld on the November 2019 charge, meaning there was no formal conviction entered against Plaintiff.

48. Third, Plaintiff was never incarcerated in connection with the November 2019 matter.

49. Fourth, the charge occurred over six years prior to Plaintiff's employment with Defendant, making it remote in time and of questionable relevance to Plaintiff's qualifications for the CSR 2 position.

50. Plaintiff is aware that other employees of Defendant with criminal histories, including employees with more recent criminal charges than Plaintiff's 2019 misdemeanor, remained employed with Defendant.

51. These other employees with criminal histories were not

pregnant, had not requested pregnancy-related accommodations, were not terminated, and continued working for Defendant.

52.    Defendant's treatment of these employees demonstrates that Defendant's stated reason for terminating Plaintiff was pretextual.

53.    Defendant's own confusion about Plaintiff's employment status became evident when, on February 2, 2026, approximately six days after Plaintiff's termination, Plaintiff received a call from the company asking why she was a "no call, no show."

54.    This February 2, 2026 phone call indicates internal confusion within Defendant's organization regarding Plaintiff's termination status and suggests the termination decision was rushed, poorly coordinated, and pretextual.

55.    The lack of coordination and communication within Defendant's organization regarding Plaintiff's termination further demonstrates that the stated background-check reason was a pretext and that the real motivation was discriminatory and retaliatory.

56.    Treirra Walker, a coworker who was employed with Defendant during Plaintiff's brief employment period, observed the events during Plaintiff's employment and is willing to testify regarding the treatment

Plaintiff experienced.

57. Ms. Walker can testify about Defendant's treatment of Plaintiff and about Defendant's comparative treatment of other employees with criminal histories who remained employed while Plaintiff was terminated.

58. Defendant terminated Plaintiff because of her pregnancy, because of her known pregnancy-related limitation, and because she requested reasonable accommodation and inquired about pregnancy-related benefits.

59. As a direct and proximate result of Defendant's conduct, Plaintiff was terminated from her employment while she was five months pregnant.

60. Plaintiff immediately lost the income she needed to support herself and prepare for the birth of her child.

61. Plaintiff lost access to the benefits she had sought when she left her previous employment at the bar, including potential maternity leave and short-term disability benefits.

62. Plaintiff has been unable to return to her prior employment at the bar, as she had left that position specifically because of her pregnancy to seek more stable employment with benefits.

63. Being visibly pregnant has made it significantly more difficult for Plaintiff to secure new employment, and this difficulty has increased as her pregnancy has progressed and become more visible.

64. Plaintiff has suffered and continues to suffer significant financial hardship as a result of losing her income less than two weeks after starting employment while five months pregnant.

65. Plaintiff has suffered and continues to suffer severe emotional distress as a result of Defendant's discriminatory and retaliatory conduct.

66. Plaintiff has experienced and continues to experience significant anxiety about the impact of the stress from her wrongful termination on her unborn child.

67. Plaintiff has experienced fear and concern for the health and well-being of her unborn child due to the stress caused by Defendant's unlawful termination.

68. In addition to the wages Plaintiff lost as a result of her termination, Defendant failed to compensate Plaintiff at the promised post-training rate of $15.50 per hour and instead continued paying her the reduced training rate of $14.00 per hour, despite extending the training period beyond the originally represented two-week duration for reasons

unrelated to Plaintiff's performance or conduct.

69.    Defendant's conduct demonstrates pregnancy discrimination, failure to accommodate under the Pregnant Workers Fairness Act, adverse action because of Plaintiff's need for reasonable accommodation, and retaliation against Plaintiff for requesting reasonable accommodation and inquiring about pregnancy-related benefits.

## COUNT I
## VIOLATION OF TITLE VII AND THE PREGNANCY DISCRIMINATION ACT
### Sex/Pregnancy Discrimination

70.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

71.    Plaintiff is a female who was pregnant during her employment with Defendant and is therefore a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

72.    At all times material, Defendant was an employer within the meaning of Title VII, employing fifteen or more employees.

73.    Plaintiff was qualified for her position as Customer Service Representative 2 and performed her job satisfactorily during her

employment.

74. Plaintiff suffered an adverse employment action when Defendant terminated her employment on January 27, 2026.

75. Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination based on her pregnancy.

76. Plaintiff was terminated just eight days after being hired and immediately after disclosing her pregnancy and inquiring about pregnancy-related accommodations and benefits during her first week of employment.

77. The temporal proximity between Plaintiff's pregnancy disclosure, her requests for time off for prenatal appointments, her inquiries about maternity leave and short-term disability benefits, and her termination supports a strong inference of discriminatory intent.

78. Defendant's stated reason for termination, a background check revealing a November 2019 misdemeanor charge with withheld adjudication, is pretextual.

79. The stated reason is pretextual because the job application only asked about felony convictions, not misdemeanors, so Plaintiff had no duty to disclose the charge and did not misrepresent anything on her application.

80. The stated reason is further pretextual because adjudication was

withheld on the charge, Plaintiff was never incarcerated, and the charge occurred over six years prior to her employment.

81. Defendant treated similarly situated employees who were not pregnant more favorably by retaining other employees with criminal histories, including employees with more recent criminal charges than Plaintiff's six-year-old misdemeanor.

82. Defendant's confusion about Plaintiff's termination status, evidenced by the February 2, 2026 phone call asking why Plaintiff was a "no call, no show," further demonstrates that the background-check rationale was pretextual.

83. Plaintiff's pregnancy was a motivating factor in Defendant's decision to terminate her employment.

84. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, concern for the health and well-being of her unborn child, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under Title VII and the Pregnancy Discrimination

Act, including:

    A.    Declaratory relief declaring that Defendant violated Title VII and the Pregnancy Discrimination Act;

    B.    Back pay with interest;

    C.    Front pay in lieu of reinstatement;

    D.    Compensatory damages for emotional distress and other non-pecuniary harm;

    E.    Pre- and post-judgment interest;

    F.    Attorneys' fees and costs as authorized by statute; and

    G.    Such other relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF THE PREGNANT WORKERS FAIRNESS ACT**
**Failure to Accommodate / Failure to Engage in the Interactive Process**

85.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

86.    At all times material, Defendant was a covered employer under the Pregnant Workers Fairness Act.

87.    Plaintiff was a qualified employee under the Pregnant Workers Fairness Act because she could perform the essential functions of the CSR 2 position, with or without reasonable accommodation.

88.     Plaintiff had known limitations related to pregnancy, childbirth, or related medical conditions, including her need for time off to attend prenatal medical appointments.

89.     Plaintiff communicated her known pregnancy-related limitations to Defendant during her first week of employment.

90.     Plaintiff requested reasonable accommodation for her pregnancy-related limitations, including brief, periodic time off to attend prenatal medical appointments.

91.     Plaintiff's requested accommodation was reasonable and would not have imposed an undue hardship on Defendant's business operations.

92.     Defendant failed to engage in the required good-faith interactive process to determine what reasonable accommodations could be provided to Plaintiff for her pregnancy-related needs.

93.     Defendant failed to provide Plaintiff with any reasonable accommodation for her pregnancy-related limitations.

94.     Defendant's failure to accommodate Plaintiff violated the Pregnant Workers Fairness Act, including 42 U.S.C. § 2000gg-1(1).

95.     As a direct and proximate result of Defendant's violations of the Pregnant Workers Fairness Act, Plaintiff has suffered damages including

lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under the Pregnant Workers Fairness Act, including:

A.    Declaratory relief declaring that Defendant violated the Pregnant Workers Fairness Act;

B.    Back pay with interest;

C.    Front pay in lieu of reinstatement;

D.    Compensatory damages for emotional distress and other non-pecuniary harm;

E.    Pre- and post-judgment interest;

F.    Attorneys' fees and costs as authorized by statute; and

G.    Such other relief as the Court deems just and proper.

<u>**COUNT III**</u>
**VIOLATION OF THE PREGNANT WORKERS FAIRNESS ACT**
**Adverse Action Because of Need for Reasonable Accommodation**

96.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

97.    At all times material, Defendant was a covered employer under

the Pregnant Workers Fairness Act.

98.     Plaintiff was a qualified employee under the Pregnant Workers Fairness Act because she could perform the essential functions of the CSR 2 position, with or without reasonable accommodation.

99.     Plaintiff had known limitations related to pregnancy, childbirth, or related medical conditions.

100.    Plaintiff requested reasonable accommodation for her known pregnancy-related limitations, including time off to attend prenatal medical appointments.

101.    Plaintiff's requested accommodation was reasonable and would not have imposed an undue hardship on Defendant.

102.    Defendant terminated Plaintiff just eight days after hiring her and immediately after Plaintiff disclosed her pregnancy and requested pregnancy-related accommodation.

103.    Defendant's termination of Plaintiff constituted an adverse action in the terms, conditions, or privileges of her employment.

104.    Defendant took adverse action against Plaintiff because of Plaintiff's need for reasonable accommodation related to pregnancy, childbirth, or related medical conditions.

105.   Defendant's conduct violated the Pregnant Workers Fairness Act, including 42 U.S.C. § 2000gg-1(5).

106.   As a direct and proximate result of Defendant's violations of the Pregnant Workers Fairness Act, Plaintiff has suffered damages including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under the Pregnant Workers Fairness Act, including:

A.   Declaratory relief declaring that Defendant violated the Pregnant Workers Fairness Act;

B.   Back pay with interest;

C.   Front pay in lieu of reinstatement;

D.   Compensatory damages for emotional distress and other non-pecuniary harm;

E.   Pre- and post-judgment interest;

F.   Attorneys' fees and costs as authorized by statute; and

G.   Such other relief as the Court deems just and proper.

## COUNT IV
## VIOLATION OF THE PREGNANT WORKERS FAIRNESS ACT
### Retaliation

107. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

108. At all times material, Defendant was a covered employer under the Pregnant Workers Fairness Act.

109. Plaintiff was a qualified employee under the Pregnant Workers Fairness Act.

110. Plaintiff engaged in protected activity under the Pregnant Workers Fairness Act by requesting reasonable accommodation for her pregnancy-related limitations, including time off for prenatal medical appointments.

111. Plaintiff also engaged in protected activity by disclosing her pregnancy-related need for accommodation and inquiring about maternity leave policies and short-term disability benefits.

112. Defendant knew of Plaintiff's protected activity because Plaintiff disclosed her pregnancy and made her accommodation requests and benefit inquiries directly to Defendant during her first week of employment.

113. Defendant subjected Plaintiff to an adverse employment action

by terminating her employment on January 27, 2026.

114. A causal connection exists between Plaintiff's protected activity and Defendant's adverse action.

115. The temporal proximity between Plaintiff's protected activity during her first week of employment and her termination just eight days after hire demonstrates a causal connection.

116. The pretextual nature of Defendant's stated reason for termination further supports the causal connection between Plaintiff's protected activity and her termination.

117. Defendant retaliated against Plaintiff because she requested reasonable accommodation under the Pregnant Workers Fairness Act.

118. Defendant's conduct violated the Pregnant Workers Fairness Act, including 42 U.S.C. § 2000gg-2(f).

119. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under the Pregnant Workers Fairness Act,

including:

A. Declaratory relief declaring that Defendant violated the Pregnant Workers Fairness Act;

B. Back pay with interest;

C. Front pay in lieu of reinstatement;

D. Compensatory damages for emotional distress and other non-pecuniary harm;

E. Pre- and post-judgment interest;

F. Attorneys' fees and costs as authorized by statute; and

G. Such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 7th day of May 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com

Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com